**NATIONAL WESTMINSTER BANK, PLC, Plaintiff,**

v.

**GRANT PRIDECO, INC., et al., Defendants.**

**No. 02 CIV.9926(LAK).**

United States District Court, S.D. New York.

Nov. 19, 2004.

Jeffrey A. Mitchell, E. Timothy McAuliffe, Jr., Fischbein • Badillo • Wagner • Harding, New York, NY, for Grant Prideco, Inc.

Gerald J. Fields, Patrick J. Rohan, Paul, Hastings, Janofsky & Walker LLP, New York, NY, for Defendant Active Media Services, Inc.

## MEMORANDUM OPINION

### (Corrected)

KAPLAN, District Judge.

Plaintiff National Westminster Bank, Plc ("NatWest") brought this diversity action to recover funds advanced to Grant Prideco, Inc. ("GPI"), a manufacturer of oilfield tubular steel products, as part of a trade barter agreement. It asserted claims also against GPI's former parent company, Weatherford International, Inc., and Active Media Services, Inc. ("Active"). GPI cross-claimed against Active. The matter now is before the Court on cross-motions for summary judgment by GPI and Active with respect to the cross-claims.

The factual background of the dispute is set forth in the Court's prior published opinion,[1] familiarity with which is assumed. Not evident from that decision, however, is the fact that NatWest and GPI entered into a settlement in 2003 pursuant to which (1) NatWest's claims against GPI and Weatherford were dismissed, (2) NatWest's claims against Active were assigned to GPI, (3) NatWest was dismissed from the action, and (4) GPI was substituted for NatWest as plaintiff. As subsequently became apparent, both GPI and Active are citizens of Delaware.[2] The question there-

---

1. 261 F.Supp.2d 265 (S.D.N.Y.2003).

2. The parties' Rule 56.1 statements submitted in connection with Grant Prideco's motion for summary judgment indicate that both corporations are incorporated in Delaware. Grant Prideco 56.1 St. ¶¶ 1,3; Active 56.1 Counterst. ¶¶ 1,3.

fore arises whether this Court has subject matter jurisdiction in light of the settlement.

■ As NatWest is an alien [3] and GPI, Weatherford and Active all are citizens of one or more of the states, diversity jurisdiction initially existed pursuant to 28 U.S.C. § 1332(a)(2), and the Court had supplemental jurisdiction over GPI's cross-claims against Active.[4] The dismissal of NatWest, however, eliminated the diverse plaintiff. The question whether to exercise supplemental jurisdiction following the pretrial disposal of the jurisdiction-conferring claim is addressed to the sound discretion of the district court.[5] The exercise of such discretion requires consideration of "judicial economy, convenience, and fairness to litigants." [6]

■ In this case, the pertinent factors weigh against exercise of supplemental jurisdiction. This is a factually complex commercial dispute governed by state law. In the absence of diversity, there is no substantial federal policy that would be advanced by retaining jurisdiction. The Court's investment of time and resources in the matter is not so extensive as to warrant retention on that ground. The extensive discovery taken by the parties is readily available for use in the state courts. There is, moreover, a decided preference for dismissal of supplemental claims when the jurisdiction-conferring claims are disposed of prior to trial.[7] Accordingly, the Court concludes, in the ex-

ercise of discretion, that the exercise of supplemental jurisdiction over the cross-claims should be declined.

■ The facts that NatWest's claim against Active was assigned to GPI as part of the settlement and that GPI was substituted as plaintiff against Active does not alter the conclusion that the Court lacks subject matter jurisdiction. To be sure, as the Supreme Court said in *Freeport–McMoRan*, the determination whether diversity of citizenship exists ordinarily is made at the outset of the case and governs regardless of subsequent changes in parties or the citizenship of parties.[8] But *Freeport–McMoRan* does not control here.

In that diversity case, one of the plaintiffs assigned its interest in the contract in suit to a non-diverse entity for business purposes unrelated to the action. The assignee was added as a plaintiff. In light of the fact that the assignee "was not an 'indispensable' party at the time the complaint was filed [and] in fact ... had no interest whatsoever in the outcome of the litigation until sometime after suit was commenced," [9] the Court held that the assignee's citizenship was immaterial. In doing so, it noted that "[a] contrary rule could well have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation." [10]

■ This case is decidedly different. Here, NatWest indisputably was owed

3. NatWest is organized under the laws of the United Kingdom and has its principal place of business in London. Compl. ¶ 1.

4. *See* 28 U.S.C. § 1367(a).

5. *E.g., Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 105 (2d Cir.1998); *see* 28 U.S.C. § 1367(c)(3).

6. *Ametex Fabrics,* 140 F.3d at 105.

7. *See, e.g., United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

8. *Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991).

9. *Id.*

10. *Id.*

 

money by GPI or its insurer. GPI claimed that Active was liable to GPI for the sum it owed NatWest because Active breached its agreements with GPI. NatWest's claim against Active was based on the theory that NatWest was a third-party beneficiary of GPI's contracts with Active. Hence, NatWest's claim against Active was entirely derivative of, and dependent upon, GPI's claim against Active. Indeed, GPI arguably was an indispensable party to NatWest's claim against Active.[11]

In these circumstances, *Freeport–McMoRan* does not require retention of jurisdiction. This is not a case in which a claim was assigned to a non-diverse stranger who did no more than take over a case previously and properly in a federal court. It is, rather, one in which the core of the dispute always was, and remains, a controversy between non-diverse parties— Active and GPI. When the diverse plaintiff bowed out, as NatWest did by settling and assigning to GPI its third-party beneficiary claim against Active, it deprived the Court of subject matter jurisdiction over that claim.[12] GPI's claim as assignee of NatWest therefore cannot serve as a basis for retaining subject matter jurisdiction.

Accordingly, the cross motions for summary judgment are denied. The action is dismissed for lack of subject matter jurisdiction.

SO ORDERED.

---

**11.** *See, e.g., Global Discount Travel Servs. v. Trans World Airlines, Inc.*, 960 F.Supp. 701, 709–10 (S.D.N.Y.1997); *Krist v. Olympia Press, Inc.*, 346 F.Supp. 182, 184 (S.D.N.Y. 1972); *see also Lipton v. Nature Co.*, 781 F.Supp. 1032, 1034–35 (S.D.N.Y.1992); *Ente Nazionale Idrocarburi v. Prudential Sec. Group. Inc.*, 744 F.Supp. 450, 458–61 (S.D.N.Y.1990).

**12.** This result is consistent with the finding of other Circuits that the *Freeport–McMoRan* rule does not apply if the party sought to be added was indispensable. *See Salt Lake Tribune Publ'g Co. v. AT & T Corp.*, 320 F.3d 1081, 1096 (10th Cir.2003) ("[D]iversity jurisdiction will be destroyed if it is determined that the later-joined, non-diverse party was indispensable to the action at the time it commenced."); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 725 (8th Cir.2001)

("The exception [to the rule of *Freeport–McMoRan* ] is where a nondiverse party must be joined because the party was indispensable at the time the complaint was filed."); *Whalen v. Carter*, 954 F.2d 1087, 1096 (5th Cir. 1992) ("[T]he Court in *Freeport–McMoRan* concluded that the addition of a nondiverse party does not defeat diversity jurisdiction unless the party was indispensable at the time the plaintiff filed its complaint."); *see also Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 480 (D.C.Cir.1996) ("*Freeport–McMoRan* indicates that there might be an exception if the new party was actually an indispensable party at the beginning of the litigation . . . ."); *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 704 (3d Cir.1996); *Costain Coal Holdings, Inc. v. Resource Inv. Corp.*, 15 F.3d 733, 734 (7th Cir.1994). The Second Circuit has not addressed this issue.