In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2704

Checkers Eight Limited Partnership, et al.,

Plaintiffs-Appellees,

v.

La-Van Hawkins, et al.,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 7708--John F. Grady, Judge.

Argued January 24, 2001--Decided February 20, 2001

   Before Flaum, Chief Judge, and Evans and Williams,
Circuit Judges.

   Flaum, Chief Judge. Defendants La-Van Hawkins and
his associated corporations appeal the amount of
damages entered under an agreed order. They claim
that a provision requiring them to pay an
additional $150,000 if their scheduled payments
under the order were tardy is an unenforceable
penalty clause. The defendants also argue that
plaintiffs Checkers Eight Limited Partnership
("Checkers") and associated persons,
partnerships, and corporations waived strict
compliance with the payment schedule. For the
reasons stated herein, we reverse and remand.

I.  Background

   The facts underlying this lengthy commercial
litigation are complicated and generally not
relevant to the legal issues presented in this
case and so will receive only a concise summary.
In 1995, Checkers, Thomas W. Lonergan, James T.
Lonergan, Thomas W. Lonergan Trust No. 1, and
Tower Food Services, Inc. (the general partner of
Checkers) filed suit against La-Van Hawkins,
Hawkins Two, Inc., Hawkins Four, Inc., Hawkins
Five, Inc., and Hawkins Eight, Inc. Count I of
the amended complaint alleged that the defendants
owed money to Checkers under a partnership
agreement signed by each of the defendants, and
Count II alleged that payments from the

defendants were owed to another partnership. The plaintiffs sought $350,747.68 on Count I and $214,597.58 on Count II. The basis of federal jurisdiction was (and is) diversity, since the plaintiffs and the limited partners of Checkers were either citizens of or were incorporated and had their primary places of business in Illinois, New York, or Ohio, while the original defendants were either citizens of or were incorporated and had their primary places of business in Georgia.

The litigation developed with the plaintiffs filing motions for summary judgment. In a June 3, 1997 opinion, the court denied one of these motions but found as substantially uncontroverted facts under Fed.R.Civ.P. 56(d) that the defendants owed at least $181,303.68 on Count I and at least $200,162.58 on Count II. In September, 1997, after being granted leave by the court, the defendants filed a counterclaim seeking reimbursement for expenses the defendants allegedly paid on behalf of the partnerships. The counterclaim stated only that the defendants sought more than $50,000 in damages, but the defendants' documented expenses totaled $1,153,484.85.

In February, 1999, the parties settled the case and had the district court enter an order memorializing their resolution. This order dismissed the defendants' counterclaim with prejudice and provided that if the defendants paid the plaintiffs a total of $250,000 in a timely manner the complaint would be dismissed with prejudice as well. This $250,000 was to be paid in an initial lump sum and then monthly installments, with the installment amounts due near the end of each month from March, 1999 to January, 2000. The order also stated that if the payments were not made in a timely manner, judgment for $400,000 minus any settlement payments would be entered against the defendants who were parties to the original partnership dispute as well as other associated entities,/1 which collectively form the defendants in this case.

The defendants were tardy making some of the payments. The payment of the first late sum, which was due on May 28, 1999 according to the agreed order, was delayed with the permission of the plaintiffs until June 4. However, the defendants did not obtain explicit permission from the plaintiffs for the remaining late payments, the next of which was the September 30 payment, which was made one day late on October 1. The sum due October 30 was not produced until November 9, with the plaintiffs filing a motion for entry of judgment on November 5, which was withdrawn when they received the payment. The

monies due on December 31 were also late and the plaintiffs filed a motion to enter judgment for $400,000 in their favor on January 7, 2000. The defendants made this payment on January 11 and paid the last sum on January 20, which was eleven days early. At that point, the defendants had paid $250,000. However, the plaintiffs did not withdraw their motion for entry of judgment under the agreed order and the district court held a hearing. After listening to argument from both sides, the court granted the motion and ordered the defendants to pay an additional $150,000.

## II. Discussion

The defendants argue that the extra $150,000 they were required to produce for not making timely payments is an unenforceable penalty clause. They claim that this sum has no relation to the damages caused by the late payments and that these damages are easily estimated by using prevailing interest rates. They further contend that the only purpose of this provision of the order was to secure performance of the contract and that the amount is insensitive to the gravity of their breach. The plaintiffs claim that the provision in question is a perfectly acceptable liquidated damages clause.

We begin by making explicit a few assumptions relied on by the parties. The first of these is that state law, rather than federal, applies to the construction of agreed orders entered by a federal court sitting in diversity. In their briefs, both parties cite only Illinois law and Seventh Circuit and Illinois district court cases interpreting Illinois law. Most of the circuits that have considered the issue have held that questions of the validity or interpretation of an agreed order resolving state law claims are governed by state law, see, e.g., Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992); Alumax Mill Prods., Inc. v. Congress Fin. Corp., 912 F.2d 996, 1007 (8th Cir. 1990); White Farm Equip. Co. v. Kupcho, 792 F.2d 526, 529 (5th Cir. 1986). Thus, we will assume with the parties that state law applies, though we need not make a definitive ruling on this question since the issue is not contested. The second assumption is that Illinois law, rather than the law of some other state, applies. Since the parties cite only cases interpreting Illinois law, we will assume that Illinois law governs their dispute. See Coleman v. Ramada Hotel Operating Co., 933 F.2d 470, 473 (7th Cir. 1991). The third premise is that Illinois applies its penalty clause jurisprudence to consensual orders approved by courts. The plaintiffs implicitly assume this in their briefs by arguing only that the provision of the agreed order at issue in

this case does not constitute a penalty clause, but at oral argument questioned whether part of a court order could ever be considered a penalty. Even if we were to consider the plaintiffs' late argument that under Illinois law no part of a settlement agreement approved by a court can be a penalty,/2 they cite no case law to that effect and we previously have found that under Illinois law portions of court-approved agreements can constitute unenforceable penalties. See South Suburban Hous. Ctr. v. Berry, 186 F.3d 851, 856 (7th Cir. 1999).

   Having established these preliminary points, we now move to the merits of the penalty clause argument. In interpreting contract provisions that specify damages, Illinois law draws a distinction between liquidated damages, which are enforceable, and penalties, which are not. See Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1289 (7th Cir. 1985). A clause is a liquidated damages provision if: (1) the actual damages from a breach are difficult to measure at the time the contract was made; and (2) the specified amount of damages is reasonable in light of the anticipated or actual loss caused by the breach. See American Nat'l Bank & Trust Co. of Chicago v. Regional Transp. Auth., 125 F.3d 420, 440 (7th Cir. 1997); Lake River, 769 F.2d at 1289-90. In addition, when the sole purpose of the clause is to secure performance of the contract, the provision is an unenforceable penalty. See American Nat'l Bank & Trust, 125 F.3d at 440; MedPlus Neck & Back Pain Ctr., S.C. v. Noffsinger, 726 N.E.2d 687, 693 (Ill. App. 2000). If the amount of damages is invariant to the gravity of the breach, the clause is probably not a reasonable attempt to estimate actual damages and thus is likely a penalty. See Raffel v. Medallion Kitchens of Minn., Inc., 139 F.3d 1142, 1146 (7th Cir. 1998); Lake River, 769 F.2d at 1290. Whether a provision is a penalty clause is an issue of law that we review de novo. See American Nat'l Bank & Trust, 125 F.3d at 439.

   Given these legal principles, the provision of the parties' agreed order requiring the defendants to pay an additional $150,000 if the installments are not paid in a timely fashion is an unenforceable penalty clause. Absent exceptional circumstances, actual damages caused by monetary payments being late are not difficult to measure because interest rates can be used to estimate the time value of money. See Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1161 (7th Cir. 1997); United Order of Am. Bricklayers & Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc., 519 F.2d 331, 335 (7th Cir. 1975). The interest that would have accrued on the late payments of the defendants is

minimal, probably less than one hundred dollars. The amount of $150,000 is unreasonable and excessive compared to the actual damages as estimated by using interest rates. The amount of damages under the agreed order also is insensitive to the magnitude of the defendants' breach. Regardless of whether the defendants were a day late in making the last payment or had refused to perform at all, they would have been required to pay $150,000 to the plaintiffs. Finally, the extra $150,000 in damages appears to have no purpose other than ensuring that the defendants made the installment payments on time. Each factor considered by the Illinois courts points to the conclusion that the provision in the agreed order is a penalty./3

The plaintiffs' principal argument is that requiring the defendants to pay a total of $400,000 adequately measures the damages caused to the plaintiffs because of the defendants' breach of the timeliness requirement of the agreed order. They base this contention on the district court's findings in its June 3, 1997 order that the defendants owed at least $381,466.26 and the possibility that the defendants could have been liable for as much as $565,345.26. The plaintiffs' argument is unpersuasive. The amount of $400,000 might have been a reasonable estimate of the damages caused by the alleged breach of the partnership agreement, though this is neither certain/4 nor pertinent. The issue before this court is not what remedy would adequately compensate the plaintiffs for the alleged breach of the partnership agreement, but rather what remedy is reasonable for the breach of the agreed order. This latter breach, the only relevant one for purposes of this opinion, was caused by the tardiness of some of the defendants' installment payments. For the reasons explained above, requiring the defendants to pay an additional $150,000 is not a reasonable estimate of the damages caused by these late payments.

The plaintiffs also argue that courts should respect contracts between two sophisticated parties and not reform such agreements so as to give one party a bargain to which the other did not agree. This claim amounts to a generalized assertion that contract provisions between commercially experienced parties should never constitute penalty clauses because the parties are of roughly equal bargaining strength. While we have noted similar criticisms in this circuit's opinions discussing Illinois penalty clause jurisprudence, see Lawyers Title, 118 F.3d at 1160-61, Lake River, 769 F.2d at 1288-90, Illinois continues to invalidate damages provisions in contracts that fail the test

outlined above even if both parties are economically sophisticated, see, e.g., Telenois, Inc. v. Village of Schaumburg, 628 N.E.2d 581, 584-85 (Ill. App. 1993); Grossinger Motorcorp, Inc. v. American Nat'l Bank & Trust Co., 607 N.E.2d 1337, 1345-46 (Ill. App. 1992). The plaintiffs' argument would prove too much if accepted, because then no damages clause between commercially experienced parties could be considered a penalty, which clearly contradicts actual Illinois law. Since, as aforementioned, we apply Illinois law in this case, we must reject the plaintiffs' argument.

III.  Conclusion

   Because the damages clause is an unenforceable penalty under Illinois law, the plaintiffs are entitled only to the actual damages caused by the defendants' late payments, as measured by an appropriate interest rate. For the reasons stated herein, we Reverse and Remand for further proceedings consistent with this opinion.

/1 The parties who are the defendants in the instant dispute are La-Van Hawkins, Hawkins One, Inc., Hawkins Two, Inc., Hawkins Four, Inc., Hawkins Five, Inc., Hawkins Eight, Inc., The La-Van Hawkins Group, Inc., Windy City Construction, Inc., Inner City Foods Company, and La-Van Hawkins & Assoc. of Chicago, Inc. At least two of the entities included in this group but who were not originally defendants, namely, Inner City Foods Company and La-Van Hawkins & Assoc. of Chicago, Inc., are incorporated and have their principal places of business in Illinois, and thus are not diverse from the plaintiffs. However, since the parties were completely diverse when the action was commenced and these two entities are not indispensable parties, their subsequent addition does not deprive this court of jurisdiction. See Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426 (1991).

/2 Claims raised for the first time at oral argument are normally considered waived. See Berens v. Ludwig, 160 F.3d 1144, 1148 (7th Cir. 1998).

/3 Because we accept the defendants' penalty clause argument, we need not address their contentions regarding waiver.

/4 Despite the district court's finding that their claims were worth at least $381,466.26, the plaintiffs quite possibly could have netted much

less than $400,000, or even $250,000, if they had continued to litigate. This course would have required the plaintiffs to expend further resources on preparing and conducting a jury trial and would have also exposed them to the possibility of being found liable on the defendants' counterclaim. If these expenses were sufficiently large, a reasonable estimate of the expected value of the plaintiffs' suit on the date that they settled could have been $250,000 or less.

EVANS, Circuit Judge, concurring. I can't agree that the court-approved settlement order, which increased Hawkins' obligation to $400,000 if he failed to make timely payments, is an unenforceable penalty clause. In fact, it seems to me that this sort of carrot-and-stick settlement agreement, blessed by a court in an order, is fairly routine. Surely, Checkers and Hawkins could have agreed to the entry of a judgment for $400,000, dischargeable as fully satisfied upon Hawkins paying $250,000 over 10 months. The court order here, in substance, isn't any different. It is wrong, I submit, to characterize this agreement as one involving "damages." It's not. It involves an alternative entitlement if certain conditions are not met. And there is nothing wrong with that, especially here where we are dealing with big boys who ought to be able to freely agree on any mechanism for resolving what the court correctly describes as complicated and "lengthy commercial litigation."

But that said, I join the court's opinion because I think Checkers, by waiting to spring its $150,000 kicker until after it got all its money, waived its right to insist on strict compliance with the order's timely payment provisions. So the court, in my view, is correct in rejecting Checkers' claim (except for a pittance of interest), although I would do so for a different reason.